# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO,<br><br>                               Plaintiff,<br>   v.<br>MM SAN DIEGO, LLC,<br><br>                              Defendant.<br><br>MM SAN DIEGO, LLC; NEO SAN DIEGO LLC,<br><br>                     Counter Claimants,<br>   v.<br>CITY OF SAN DIEGO<br><br>                   Counter Defendant. | CASE NO. 16cv964-WQH-BGS<br><br>ORDER |

HAYES, Judge:

    The matter before the Court is the Motion to Compel Mediation by Independent Engineer and Stay Proceedings filed by Defendant and Counter Claimant MM San Diego LLC ("MM San Diego"). (ECF No. 17).

## I. Background

    Plaintiff City of San Diego ("the City") filed a complaint in the Superior Court of the County of San Diego alleging breach of contract causes of action against MM San Diego, requesting declaratory relief, and demanding that MM San Diego account for transactions for a certain period pursuant to two contracts between the parties. (ECF

No. 1).

On April 21, 2016, MM San Diego removed this matter to this Court pursuant to 28 U.S.C. § 1441(b). *Id.*

On April 28, 2016, MM San Diego and NEO San Diego filed a counterclaim against the City alleging, among other claims, breach of contract against the City arising out of the City's alleged refusal to participate in mediation before an Independent Engineer. (ECF No. 3).

On April 28, 2016, MM San Diego filed an answer to the complaint. (ECF No. 4).

On May 16, 2016, the City filed an answer to the counterclaim. (ECF No. 7).

On August 10, 2016, MM San Diego filed the Motion to Compel Mediation by Independent Engineer and Stay Proceedings. (ECF No. 17). On September 1, 2016, the City filed a response. (ECF No. 18). On September 12, 2016, MM San Diego filed a reply. (ECF No. 20).

**II. Allegations of the Counterclaim and Answer**

MM San Diego operates facilities that provide electricity to the City of San Diego. (ECF No. 3 at 2). The City uses the electricity provided by MM San Diego at two locations under two separate agreements[1] (the "Cogeneration Agreements") governing the sale of electricity to each location. *Id.* at 3. Section 12.7 of each agreement states,

> Either party hereto may give the other party written notice of any dispute with respect to the performance or payment of any obligation hereunder. Such notice shall specify a date and location for a meeting of the parties hereto at which such parties shall attempt to resolve such dispute. In the event that such dispute cannot be resolved by the parties hereto within 30 days, such dispute shall be referred to an Independent Engineer for advice and nonbinding mediation. If the Independent Engineer is unable, within 30 days, to reach a determination as to the dispute that is acceptable to the parties hereto, the matter may be referred by either party to Legal Proceedings.

(ECF No. 3-1 at 70-71, 146).

---

[1] Copies of both agreements are attached to the counterclaim. (ECF No. 3-1 at 3-87, 88-161).

MM San Diego alleges that on February 1, 2016,

> MMSD gave notice to the City that MMSD disputed the City's performance of its obligations under each Agreement, specifically the City's obligation to "use commercially reasonable efforts to obtain any Shortfall Amount from Alternative Suppliers at the lowest available total cost, and in a manner which minimizes any demand or service charges" and made a demand upon the City that it meet with MMSD in an attempt to resolve the dispute.

(ECF No. 3 at 6).

MM San Diego alleges that, "The City has breached the [Cogeneration Agreements] by refusing to meet with MMSD in an attempt to resolve the dispute, pursuant to Section 12.7 of each Agreement and, if the parties are unable to resolve the dispute, by refusing to submit the dispute to mediation by an Independent Engineer." *Id.* at 9-10. MM San Diego alleges that it has no adequate remedy at law and "specific performance is necessary to provide complete relief to MMSD." *Id.* at 10.

In the answer to the counterclaim, the City denies MM San Diego's allegation that it breached the Cogeneration Agreements. (ECF No. 7 at 5).

**III. Discussion**

MM San Diego contends that the City has refused to participate in mediation and moves this Court to "order the City to comply with its contractual obligation to engage [in] mediation to be conducted by a neutral Independent Engineer." (ECF No. 17-1 at 3). MM San Diego seeks an order "compelling the City's . . . compliance with the non-binding mediation provisions set forth in section 12.7" of the Cogeneration Agreements. *Id.* at 2. MM San Diego contends the Court has the authority to compel mediation under the Federal Arbitration Act (the "FAA"), to grant a preliminary injunction ordering specific performance of the mediation provision of the contracts, or to order the parties to mediate pursuant to the Court's "inherent authority." *Id.* at 8. MM San Diego requests that the Court stay proceedings until mediation is completed. *Id.* at 16.

The City contends that it has complied with its contractual obligations to MM San Diego under section 12.7 of the Cogeneration Agreements. The City asserts that

the parties participated in two mediation sessions in 2015 before retired Judge William Cahill and agreed that Judge Cahill was being substituted for an Independent Engineer as provided for in the Cogeneration Agreements. (ECF No. 18 at 3-4). The City contends that the disputed mediation issue is "exactly the issue" the parties agreed to submit to Judge Cahill in the previous mediation process. *Id.* at 6. The City contends that it has "substantially complied and substantially performed its obligations under Section 12.7" by participating in the mediation before Judge Cahill. *Id.* at 7.

### A. The Federal Arbitration Act

Section 2 of the FAA provides, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Pursuant to section 4 of the FAA, a party may move for a district court order compelling arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

This Court has previously concluded that "there is no legal authority for an order to compel non-binding mediation." *Heston v. GB Capital Holdings*, LLC, No. 16cv912

WQH (RBB), 2016 WL 4468254, at *3 (S.D. Cal. Aug. 23, 2016); *see also Trujillo v. Gomez*, No. 14cv2483 BTM (BGS), 2015 WL 1757870, at * 9 (S.D. Cal. Apr. 17, 2015) (finding that FAA remedies are not available for non-binding mediation and that the California Code of Civil Procedure lacks a provision for motions to compel mediation).

MM San Diego relies on *Wolsey, Ltd. v. Foodmaker, Inc.*, in support of its contention that a district court has the authority to compel non-binding mediation under the FAA. 144 F.3d 1205 (9th Cir. 1998). In *Wolsey*, the Court of Appeals considered whether non-binding arbitration qualified as "arbitration" under the FAA, but did not address non-binding mediation. *Id.* at 1209. The Court of Appeals concluded that the non-binding arbitration provision should qualify as "arbitration" for purposes of the FAA because it did not allow the parties to seek recourse to the courts before the arbitrator made a decision and the arbitration was complete. *Id.* The Court of Appeals relied in part on a Third Circuit decision holding that "[a]rbitration does not occur until the process is completed and the arbitrator makes a decision" which precluded parties from seeking "recourse to the courts before that time." *Id.* at 1208 (citing *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3rd Cir. 1997)). The Court of Appeals held that "arbitration need not be binding to fall within the scope of the Federal Arbitration Act." *Id.* at 1209.

In this case, section 12.7 expressly allows the parties to pursue legal proceedings if the Independent Engineer has not reached "a determination . . . acceptable to the parties" within 30 days. (ECF No. 3-1 at 71, 146). Contrary to the non-binding arbitration provision at issue in *Wolsey*, section 12.7 does not indicate that the parties have agreed to seek a complete resolution from the Independent Engineer or that the parties have agreed to not pursue litigation until the mediation process is complete. *See also Trujillo*, 2015 WL 1757870, at *9 (declining to compel mediation pursuant to the FAA because the mediation process at issue did not "purport to adjudicate or resolve a case in any way" and thus did not qualify as "arbitration" under the FAA).

The Court concludes that the non-binding mediation provisions in section 12.7

of each Cogeneration Agreement do not constitute an agreement to arbitrate falling within the scope of the FAA. In the absence of legal authority, the Court declines to grant MM San Diego's motion to compel non-binding mediation.

## B. Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). At a minimum, "the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (citation omitted). "Issuing a preliminary injuction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Financial injury "will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984).

### 1. Likelihood of Irreparable Injury

MM San Diego contends that it will be irreparably harmed if the City is not ordered to mediate because it will be "forced to incur litigation costs." (ECF No. 17-1 at 15). MM San Diego contends that some of these litigation costs are nonmonetary because litigation will be "a drain on company resources." *Id.* MM San Diego contends that without mediation, it will be forced to "incur these costs without the benefit of information regarding the City's systems that would help MMSD assess its risks." *Id.* MM San Diego has not shown that adequate compensatory relief for any litigation costs

will be unavailable at a later point in the proceedings.[2] The Court concludes that MM San Diego has not satisfied its burden to establish that MM San Diego faces a "significant threat of irreparable injury." *See Arcamuzi*, 819 F.2d at 937.

**2. Likelihood of Success On the Merits**

MM San Diego contends that it has established a likelihood of success on the merits. MM San Diego contends that it has demonstrated that the City breached a contractual obligation by refusing to participate in mediation and that specific performance is the appropriate remedy for this breach. (ECF No. 17-1 at 12-14). The City contends that it has satisfied its contractual obligations through previous mediation sessions with Judge Cahill. (ECF No. 18 at 3-7).

In support of its motion to compel, MM San Diego provides communications between counsel for the City and counsel for MM San Diego. (ECF No. 17-3 at 4-16). In a letter to the City dated February 1, 2016, counsel for MM San Diego invoked the non-binding mediation provision of section 12.7 and stated that MM San Diego disputed the City's performance of its contractual obligation "to 'use commercially reasonable efforts to obtain any Shortfall Amount from Alternative Suppliers at the lowest available total cost, and in a manner which minimizes any demand or service charges' as set forth in section 9.2(B)." *Id.* at 5. In a letter to MM San Diego dated February 3, 2016, counsel for the City responded and stated, "[T]he City does not intend to further meet with MMSD as it has complied with the contractual obligations under Section 12.7." *Id.* at 8. In its opposition to MM San Diego, the City provided copies of email exchanges discussing the mediation before Judge Cahill. (ECF No. 18-2 at 2-4; ECF No. 19). An email dated July 11, 2014 from counsel for MM San Diego regarding the mediation before Judge Cahill states "[T]his message is to confirm that

---

[2] MM San Diego contends that the issue of compliance with section 12.7 alleged in the counterclaim should be resolved prior to resolution of the merits of the counterclaim because MM San Diego will be "forced to incur [litigation] costs without the benefit of information regarding the City's systems that would help MMSD assess its risks." (ECF No. 17-1 at 15). Assuming that there are no disputed issues of material fact, this matter may be resolved promptly in a motion for summary judgment.

Fortistar is willing to mediate the issue of the contract interpretation of costs included in the North City Shortfall Amount Calculation. In doing so, we are also willing to use a professional mediator as opposed to an Independent Engineer as called for in Section 12.7 of the North City Cogeneration Agreement."[3] (ECF No. 18-2 at 3).

MM San Diego has the burden to demonstrate a likelihood of success on the merits on its claim that the City breached the dispute resolution provisions of the Cogeneration Agreements. MM San Diego provides material to show that the City refuses to participate in further mediation at this point in the proceedings; however, MM San Diego does not provide facts to sufficiently dispute the City's contention that it has already satisfied its contractual obligations through the prior mediation session. The Court concludes that MM San Diego has not carried its burden to demonstrate a likelihood of success on the merits on its breach of contract claim against the City. The Court concludes that MM San Diego is not entitled to a preliminary injunction under Rule 65.

**III. Conclusion**

IT IS HEREBY ORDERED that the Motion to Compel Mediation By Independent Engineer and Stay Proceedings (ECF No. 17) is DENIED.

DATED: December 14, 2016

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

---

[3] The City's complaint alleges, "CITY is informed and believes., and thereon alleges, that on or about 1998, that Generation II Locomotives, Inc. sold its fifty percent ownership in Minnesota Methane, LLC to Fortistar Methane, LLC . . . . CITY is informed and believes, and thereon alleges, that on or about February 1998, Minnesota Methane, LLC created a special purpose San Diego entity MM San Diego LLC[.]" (ECF No. 1-2 at ¶¶ 16-17).